**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| TERRY ALAN CARLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-CV-04007-FJG |
| | ) | |
| STANDARD INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>ORDER</u>**

Currently pending before the Court is Defendant Standard Insurance Company's

Motion for Summary Judgment (Doc. No. 17).

**I.     BACKGROUND[1]**

This case was filed pursuant to the Employees Retirement Income Security Act

of 1974 ("ERISA").  Plaintiff, Terry Carlson was an employee of Cargill and had the job

title "Plant Operation Manager."  Carlson was a participant in an employee welfare

benefit plan sponsored by Cargill that paid long-term disability benefits to eligible,

qualifying participants who complied with the terms of the plan ("Plan").  Standard

Insurance Company ("Standard") insured benefits that became payable under the Plan.

On or about March 29, 2011, Carlson submitted and "Employee Claim Submission

Form for Cargill Incorporated – LTD" ("Claim Form").  On the Claim Form, Carlson

represented that he was disabled because he had peripheral neuropathy that caused

pain in both feet.

---

[1] In accordance with Local Rule 56.1(a), "all facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party."  See <u>Ruby v. Springfield R-12 Public School Dist</u>., 76 F.3d 909, 911 n.6 (8<u>th</u> Cir. 1996).

On October 3, 2011, Standard issued its final administrative denial of Carlson's

claim by letter. The LTD Plan provides:

> You are Disabled if you meet the following definitions during the period they apply:
>
> > A. Own Occupation Definition of Disability.
> > B. Any Occupation Definition of Disability.
>
> A. Own Occupation Definition of Disability
>
> During the Benefit Waiting Period and the Own Occupation Periods you are required to be Disabled from your Own Occupation.
>
> You are Disabled from Your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder:
>
> > 1. You are unable to perform with reasonable continuity the Material Duties of Your Own Occupation; and
> > 2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.
>
> Note: You are not Disabled merely because your right to perform your Own Occupation is restricted, including a restrictions or loss of license.
>
> During the Own Occupation Period you may work in another occupation while you meet the Own Occupation Definition of Disability. However, you will no longer be Disabled when your Work Earnings from another occupation meet or exceed 80% of your Indexed Predisability Earnings. Your Work Earnings may be Deductible Income. See Return to Work Provisions and Deductive Income.
>
> Own Occupation means any employment, business, trade, profession, calling or vocation that involves Materials Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining you Own Occupation, we are not limited to looking at the way you perform your job for your Employer, but we may also look at the way the occupation is generally performed in the national economy. If your Own Occupation involves the rendering of professional services and you are required to have a professional or occupational license in order to work, your Own Occupation is as broad as the scope of your license.
>
> Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by

2

employers from those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will we consider working an average of more than 40 hours per week to be a Material Duty.

---

Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer all claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

Our authority includes, but is not limited to:

1. The right to resolve all matter when a review has been requested;
2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
3. The right to determine:
   a. Eligibility for insurance
   b. Entitlement to Benefits
   c. The amount of benefits payable; and
   d. The sufficiency and the amount of information we may reasonably require to determine a., b., c., above.

Subject to the review procedures of the Group Policy, and any decision we make in the exercise of our authority is conclusive and binding

(Doc. No. 18).

On December 29, 2011 Plaintiff brought suit in the Circuit Court of Moniteau County, Missouri (Doc. No. 1). On January 10, 2012, the case was removed to this Court (Doc. No. 1). On April 19, 2012, Defendant filed the present Motion for Summary Judgment (Doc. No. 17).

## II.    STANDARD OF REVIEW

### A.) Summary Judgment Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of

3

law.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  The facts and inferences are viewed in the light most favorable to the nonmoving party.  Fed.R.Civ.P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590.  The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law.  Matsushita, 475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleading but by affidavit or other evidence must set forth facts showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997).  To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved.  Lower Brule, 104 F.3d at 1021.  Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment.  Id. Rather, "the disputes must be outcome determinative under the prevailing law."  Id.

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts."  Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure:  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex, 477 U.S. at 327.

4

**B.) ERISA Standard of Review**

A court reviewing an ERISA plan administrator's decision denying benefits should apply a de novo standard of review unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If a plan gives the administrator discretionary authority, then a court should review a plan administrator's decision only for abuse of discretion. Id. at 115. The parties here do not dispute that the Plan gives the Plan Administrator discretionary authority to interpret or construe the Plan terms.

Under the abuse-of-discretion standard, a court applies a deferential standard of review to an administrator's plan interpretation and fact-based eligibility determinations. See Donahoe v. FMC Corporation, 74 F.3d 894, 898 (8th Cir. 1996) (abrogate don other grounds by Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003)). The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. Id. The proper inquiry is "whether the plan administrator's decision was reasonable; i.e. supported by substantial evidence." Donaho, 74 F.3d at 899. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). A court will affirm an administrator's reasonable interpretation of a plan. Cox v. Mid-America Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993); Finley v. Special Agents Mut. Benefit Ass'n, Inc., 957 F.2d 617,621 (8th Cir. 1992).

5

A court's decision as to whether a plan administrator abused his or her discretion must be based on facts known to the administrator at the time the benefits claim decision was made. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997); Collins v. Central States, Southeast and Southwest Areas Health & Welfare Fund, 18 F.3d 556, 560 (8th Cir. 1994). When applying the arbitrary and capricious standard of review, the Court only considers evidence that is part of the administrative record. See Barnhart v. UNUM Life Ins. Co. of America, 179 F.3d 583,590 (8th Cir. 1999); Layes v. Mead Corp., 132 F.3d 1246, 1251 (8th Cir. 1998). The court cannot substitute its own weighing of the conflicting evidence for that of the plan administrator. Cash, 107 F.3d at 641; Cox, 965 F.2d 569, 573 (8th Cir. 1992).

## III. DISCUSSION

Defendant moves for Summary Judgment of the present case (Doc. No. 17). First, Defendant states substantial evidence supported Standard's determination that Carlson did not have peripheral neuropathy. On March 15, 2011, Carlson was examined by a neurologist, Dr. Ahmad Hooshmand, to whom his own primary care physician had referred him. Dr. Hooshmand wrote to that primary care physician, "Patient is frustrated by working so many years and he asked me if he is a candidate for disability and my answer was negative." On September 7, 2011, Carlson wrote "He [Dr. Hooshmand] told me to go back to Dr. Craighead [performed hip surgery on Carlson]. I told him my hip wasn't the issue, that the neuropathy was what was keeping me from working." On July 19, 2011, Dr. Justin Malone, a second neurologist retained by Carlson, conducted or had conducted a Neurodiagnostic evaluation. Dr. Malone reported on a Neurodiagnostic Medical Report Form, "This is a normal study of the bilateral lower limbs without evidence of peripheral neuropathy or active lumbar

6

radiculopathy."  Dr. Malone wrote a Consultation Note following his examination of Carlson and in that Consultation Note he reported, "I have no evidence of an underlying neurological disorder at this time, so I will discharge him from clinic."  In September 2011, Dr. Andrew J. Gordon, board certified in neurology, reviewed the medical records of Carlson.  Dr. Gordon concluded, "There is no functional impairment from a neurological perspective.  There is no indication of inability to work as a Plant Operations Manager from a neurological perspective. (Doc. No. 18).

Second, Defendant states substantial evidence supported Standard's determination that Carlson's "own occupation" was "Production Superintendent", a light duty occupation.  Anne Mileham, M.S. CRC, determined that Carlson's own occupation within the meaning of the Policy was "Production Superintendent."   Karol Paquette, M.S. CRC, has 27 years of experience in vocational rehabilitation and counseling. Paquette also concluded that Carlson's "own occupation" within the meaning of the Policy was "Production Superintendent."  The occupation of "Production Superintendent" is a light duty occupation according to the United States Department of Labor's Dictionary of Occupational Titles.  Ms. Paquette thoroughly investigated Carlson's specific job in order to determine what he did so that she could determine what his occupation was.  She reviewed both the Employer's Statement and the Employee's Statement.  She considered correspondence from Carlson and his employer in which they described his specific job as well as correspondence from other doctors.  She research the DOT, the O*NET and the Occupational Handbook.  In her report, Paquette explained in detail her analysis and the rationale for her conclusions. Ms. Mileham reviewed most of the same materials as Paquette.  Defendant states that

7

although Plaintiff and his employer did assert that Carlson could no longer perform his specific job at Cargill, this is not the issue.  The issue for Standard is not whether Carlson could perform his specific job, but rather if he could perform his occupation as performed in the national economy.  Courts consistently recognize this distinction. (Doc. No. 18).

Finally, Defendant states substantial evidence supported Standard's determination that Carlson could work in his own occupation. Neither Dr. Hooshmand, Dr. Malone, nor Dr. Craighead signed any document opining that Carlson was disabled or that any restrictions or limitations applied to him.  (Doc. No. 18).

Plaintiff asserts that summary judgment should not be granted (Doc. No. 20). First, Plaintiff states Defendant disregarded favorable evidence from Plaintiff and Plaintiff's physicians, medical tests, and even the Plaintiff's Human Resources Manager that Plaintiff was disabled from performing the duties of his occupation due to severe pain in both lower extremities.  As such, Standard's denial was arbitrary and capricious. A statement from Plaintiff's primary personal physician, Dr. Ronald Strong dated July 22, 2011, states that Plaintiff's symptoms "do[] indicate a rather significant neuropathy being present."  Further, a neurological exam conducted by Dr. Thomas J. Folz conducted on August 25, 2011 found "electrodiagnostic findings in the lower extremities consistent with a sensorimotor peripheral polyneuropathy."  A podiatrist exam conducted by Dr. Jody McAleer on September 6, 2011 states that "it appears the patient's neuropathy has increased since 2006 and is progressive."  Finally, Plaintiff's Human Resources Manager stated that he could no longer perform his occupation. (Doc. No. 20).

Second, Plaintiff states that after Standard's denial, he received a fully favorable decision from the Social Security Administration granting him total disability to a higher standard of proof of disability than required by the terms of Plaintiff's contract with Defendant, based upon the same facts and medical evidence. This should serve as evidence that Defendant's denial was arbitrary and capricious. (Doc. No. 20).

The Court finds that Standard's denial was not arbitrary and capricious and thus, summary judgment is proper. First, the opinions of each doctor upon which Standard based its denial constitutes substantial evidence. Plaintiff's diagnosis of neuropathy was inconsistent and in some cases, mild. Second, the Defendant properly defined "own occupation" to mean a participant's occupation as it is generally performed in the national economy. Berges v. Standard Ins. Co., 704 F.Supp.2d 1149, 1182 (D.Kan. 2010). Defendant was not limited to looking at the way Plaintiff performed her job, specifically. Id. Given the above, a reasonable person could have reached a similar decision with the evidence before him. Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011). Finally, the Court will not consider Plaintiff's Social Security award[2] because the award was entered after the benefits determination presently before this Court. Lawyer v. Hartford Life and Accident Ins., 100 F.Supp.2d 1001, 1011 (W.D. Mo. 2000). Accordingly, Standard's denial was not arbitrary and capricious.

---

[2] Plaintiff did not provide the Court with documentation of this notice.

**IV.      CONCLUSION**

Defendant Standard Insurance Company's Motion for Summary Judgment (Doc.

No. 17) is hereby **GRANTED**.

**IT IS SO ORDERED.**

Date: <u>February 4, 2013</u>                              <u>**S/ FERNANDO J. GAITAN, JR.**</u>
Kansas City, Missouri                              Fernando J. Gaitan, Jr.
                                                   Chief United States District Judge

Case 2:12-cv-04007-FJG   Document 25   Filed 02/04/13   Page 10 of 10